[Civ. No. 8082. Second Appellate District, Division Two.—November 3, 1933.]

CYNTHIA GOODE, Respondent, v. WALTER WILLS et al., Appellants.

O'Melveny, Tuller & Myers, J. R. Girling and L. M. Wright for Appellants.

Ernest R. Orfila and John Henderson Pelletier for Respondent.

STEPHENS, P. J.—The plaintiff, a professional dancer, brought an action against defendant Wills, a dancing teacher, for damages sustained by her while taking a dancing lesson from defendant. The cause was tried by the court sitting without a jury and resulted in a judgment

against defendant in the sum of $6,000 and costs. Defendant appeals from the judgment on the ground that the amount thereof is excessive, claiming that the plaintiff assumed the risk of a hazardous act, that defendant was not negligent and that plaintiff was negligent, and was guilty of contributory negligence.

The evidence shows that the plaintiff is a native of England and spent several years educating herself as a professional stage dancer and for some time past has teamed with her sister in Europe. Something like a year before she met with the accident she was dancing in Paris and the south of France at the watering resorts earning from three to four hundred dollars net per week. She came to this country on a visit to her relatives and intended returning to Europe, but has been delayed on account of the accident. While here she went to Mr. Wills, defendant and appellant, for lessons in acrobatic and tap dancing, as she had never learned these branches of the art. She had taken five or six lessons and had been instructed in doing acts known as a "cartwheel". She had also been instructed in doing an act known as a "front-over". The lessons were had in a large room and on large mats or pads. Just before the happening under consideration here, plaintiff and another pupil had been under the direction of defendant's assistant and had been limbering and stretching and turning the cartwheels. ·Mr. Wills entered and took respondent under his care with the cartwheel. In performing this act the instructor stands at the right for a right turn just far enough away to steady the pupil as she comes over. In performing the front-over the teacher stands directly in front of the pupil. The teacher either directs a front turn or directs the pupil to assume the position proper for such an act. This position is hands on the floor in front, with the left leg lifted. The act is finished by the pupil bending the right knee and with a spring turning the body over and lighting on the feet immediately in front of the instructor. The instructor catches her at the waist to steady her or catches her otherwise to keep her from falling as the need presents itself. It is agreed by all witnesses that several cartwheels had been turned by respondent for appellant, and the evidence seems to show that the teacher then took another pupil through some cartwheels. Immediately there-

after respondent was directed to step upon the mat and another act was started. This ended like a front-over, but as she was finishing this maneuver she fell, only partially supported by appellant. She gave an outcry of pain and was immediately taken to a hospital, where it was found that two bones of her right ankle had been broken.

The crux of the case lies in just what took place immediately before and during this act that ended so unfortunately.

Several witnesses, including the appellant, say that the teacher was in position for a cartwheel. The other pupil so testifies but also testifies that respondent took the "stance" for a front-over. The testimony of respondent is not read the same by both parties. In appellant's reply brief is found this statement: "The plaintiff contends that defendant directed her to perform a front-over and then stood in his customary position to aid a pupil in the execution of a cartwheel." Practically the same statement is made in the opening brief. We can find no testimony to support these statements, but on the contrary we find quite the reverse. When in cross-examination of respondent counsel was attempting to illustrate the relative positions of the parties on a blackboard the following took place:

"Q. Would this roughly illustrate the position of Mr. Wills? A. No, it would not. He was in front of me." And later: "Q. In other words, he was in the same position he had previously been standing for you, while you were doing your cartwheels? A. He was nearer. Q. But south of you? A. Yes. Q. At that time you were facing sideways, to the east? A. I was facing Mr. Wills. Q. You turned around, and changed your position? A. Yes, I changed my position entirely. Q. What caused you to do that? A. He gave me instructions to put my hands on the floor, and I put my hands on the floor, and I was facing him, with my legs in the air, and I turned over. Q. What did he tell you at that time? A. He did not say anything while I was doing the trick. He gave me instructions for the trick, before I started it. Q. Did he tell you to do a bend-over or a front-over? A. He told me to put my hands on the floor, and my legs straight in the air and bend over. Q. He told you that? A. He told me that."

The testimony of appellant is essentially inconsistent with this testimony of respondent and is to the effect that he was in position for her to cartwheel and that she changed from doing a cartwheel to a front-over in the midst of the act.

It is testified by respondent's sister and her husband that appellant came to their place soon after the accident with respondent's clothes and told them of the accident. We quote from the brother-in-law's testimony:

"A. He said she had broken her ankle. I said 'Come in'. And as he came in the front door my wife came in the room and he sat down and I said 'How did it happen?' And he said 'Miss Goode slipped and broke her ankle.' I said, 'Good Lord, man, I have been in the theatrical business for seventeen years, and there is no excuse for anyone slipping and breaking an ankle. You were her instructor and should have caught her.' And he said 'Yes' and went all to pieces. Q. What else? A. He said for me not to worry—I asked him where she was, and he said, 'She is down at the Dickey & Cass Hospital' and for me not to worry, that he would see that she was reimbursed for her loss of time, and also her doctors' bills. That he was thoroughly covered by insurance. . . . He said, 'I guess you are right. I should have caught her. But don't worry about it. I will do the right thing by her.'"

We quote from the sister's testimony:

"He said that my sister had met with an accident and had broken her ankle, that he had let her fall, but he said 'Don't worry, I will do the right thing. I am insured and will take care of the doctor's bills and see what I can do while she is unemployed'—I am trying to think of the exact words—he said he would reimburse her and try to get her so much a week while she was laid up."

It would seem that we have referred to and have recited sufficient of the testimony to demonstrate that a conflict of substantial testimony was before the trial court and that such conflict squarely presents the well-known rule that appellate tribunals will not disturb findings in such circumstances. We have carefully examined the cases cited in appellant's reply brief under the heading "The Mere Statement of the Plaintiff or General Statements of Uninformed Witnesses Does Not Create Such a Conflict." But we are not confronted with a mere statement or general

statement here. Both appellant and respondent have given direct, material and vital evidence. Certainly appellant's very able counsel do not mean to argue to us that the respondent's testimony should be characterized as a general statement and appellant's testimony as to the same event should be given a different and higher characterization.

Appellant contends that the business was hazardous and that respondent assumed all risk. However, we do not think this case presents a set of facts justifying the conclusion that the acts being taught were hazardous to the degree that all risk, including negligence of the teacher himself, was assumed by the pupil. Certainly no cases cited support that premise. The trial court necessarily assumed the duty of determining whether or not there was negligence, and whether or not there was contributory negligence. The substantial evidence of either side presented at most a conflict. We cannot disturb the finding in that circumstance.

Is the award of $6,000 so high that an appellate court will reverse the judgment? The case of *Sawyer* v. *Nelson*, 115 Cal. App. 490 [1 Pac. (2d) 1068], quotes with approval the following from *Hale* v. *San Bernardino Valley Traction Co.*, 156 Cal. 713 [106 Pac. 83]: "If a motion for a new trial upon this ground (excessive award) is denied by the trial court, we cannot reverse the judgment unless the amount thereof is so plainly and outrageously excessive as to suggest, at the first blush, passion or prejudice or corruption on the part of the jury (or the court where tried without a jury)." With this in mind, we shall sketch the evidence. A toe dancer whose earnings amount to $300 and up per week has both right ankle bones broken on December 1st. She is in bed six weeks. At the trial her doctor testifies on or about May 20th of the next year that she will require six weeks or more treatment before she is normal. Her bills for hospital and treatment aggregate $750. It would not appear that the sum allowed will fully compensate respondent.

The judgment is affirmed.

Craig, J., and Archbald, J., *pro tem.*, concurred.